

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2008

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4312

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Chen v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1471.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1471

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-4312

SAI ZHU CHEN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review from the Board of Immigration Appeals,
BIA No. A70-897-099
Immigration Judge: The Honorable Charles Honeyman

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 14, 2008

Before: SLOVITER, and SMITH, *Circuit Judges*,
DIAMOND, *District Judge*[*]

(Filed:  March 6, 2008)

OPINION

SMITH, *Circuit Judge*:

---

[*]The Honorable Gustave Diamond, Senior District Judge for the United States District Court for the Western District of Pennsylvania, sitting by designation.

Sai Zhu Chen ("Chen") seeks review of an order issued by the Board of Immigration Appeals ("BIA") on September 5, 2006, which adopted and affirmed the decision of the Immigration Judge ("IJ") denying Chen's motion to reopen her deportation proceedings and reinstate her asylum application.[1] Chen entered the United States in April 1993 and in her request for asylum, she indicated that the Chinese government had persecuted her because she had refused to submit to sterilization procedures after twice submitting to the insertion of an intrauterine device ("IUD"). She claimed that she was first subjected to the insertion of an IUD in 1979 following the birth of her second child.[2] Nonetheless, she claimed the IUD fell out and that she became pregnant again, delivering a daughter in 1981. After this delivery, Chen was subjected to yet another procedure to have the IUD replaced. She stated in her amended asylum application[3] that she was forced to put her third child up for adoption in 1981 because the baby could not be placed on her household register. Prior to fleeing from China in 1993, Chen believed the Chinese Government was preparing to have her sterilized.

---

[1] The BIA had jurisdiction over Chen's motion to reconsider pursuant to 8 C.F.R. § 1003.2. We have appellate jurisdiction over the BIA's denial of the motion to reopen because it is a final order of removal for purposes of 8 U.S.C. § 1252. *Sevoian v. Ashcroft*, 290 F.3d 166, 171 (3d Cir. 2002).

[2] Chen was born in Changle City, Fujian Province on March 21, 1953. She and her first husband, who died, have three children in China; two sons were born in 1975 and 1977 respectively, and a daughter was born in 1981.

[3] In her initial 1993 asylum application, Chen stated that officials had removed furniture from her home and warned her to have surgery. Chen did not assert that an IUD was forcibly inserted until she amended her asylum application in 1996.

In January 1997, Chen was served with an Order to Show Cause charging that she was subject to deportation because she entered the United States as an alien without inspection. 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). In August 2001, Chen married George Chen ("George"), a United States citizen. The marriage prompted George to file a visa petition on her behalf, which allowed Chen to proceed with a consular process. After initially filing a motion to adjourn her deportation proceedings which was granted in February 2004, Chen filed another motion to adjourn removal proceedings and stated: "Even if unable to obtain third country processing prior to her individual hearing . . . she agree[s] to accept voluntary departure before this Court due to the likelihood of success, as she can demonstrate a bona fide marriage to a U.S. citizen." On April 12, 2005, the IJ withdrew Chen's application for asylum and granted her request for a voluntary departure within a year. However, Chen subsequently filed a motion to reopen deportation proceedings for reinstatement of her asylum application in March 2006. She divorced her husband, a U.S. citizen, in January 2006. Chen requested that the IJ reinstate and reopen her case to pursue asylum based on "the birth control related persecution that she suffered in China."

On April 17, 2006, the IJ denied Chen's motion to reopen. The IJ determined that her second marriage to a U.S. citizen that ended in divorce was insufficient to justify

reopening the proceedings and, furthermore, that Chen's age, marital status, and three adult children dictated that the possibility of a forced sterilization was "both remote and speculative at this point in time." Chen filed an appeal of the IJ's denial to the BIA. The BIA dismissed Chen's appeal. It concluded that the IJ had appropriately found that she had not demonstrated a well-founded fear of future persecution. The BIA further explained that it was not persuaded that Chen was either "prima facie eligible for asylum based on past forcible insertion" of an IUD, or that forcible insertion of an IUD was "in the same category as a forcible abortion or forced sterilization." It recognized that some Courts of Appeals had considered the issue of whether forcible insertion of IUDs constituted persecution under 8 C.F.R. § 1101(a)(42), but noted that the Third Circuit had yet to address the issue.

This timely petition for review followed. Because the BIA adopted and affirmed the IJ's denial of the motion to reopen, and set forth its own brief rationale, we review the decisions of both the BIA and the IJ. *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). We review any findings of fact for substantial evidence and the ultimate denial for an abuse of discretion. *See Korytnyuk v. Ashcroft*, 396 F.3d 272, 280 (3d Cir. 2005). An abuse of discretion will be found if the denial of a motion to reopen "is arbitrary, irrational, or contrary to law." *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006). We are mindful that motions to reopen are generally disfavored. *Abudu v. INS*, 485 U.S. 94, 107 (1988).

4

Chen argues that the BIA abused its discretion by affirming the denial of her motion to reopen. She asserts that the IJ's finding that she did not establish that she had a well founded fear of future persecution was nothing more than speculation and conjecture. Because there is nothing of record to contradict her claim that the IUDs she had were forcibly inserted, she contends there is no support for the BIA's determination that she failed to meet her burden of proof. In addition, she contends that the refusal to grant her motion to reopen conflicts with the BIA's decision in a case remanded by the Seventh Circuit. *See Zheng v.Gonzales*, 409 F.3d 804 (7th Cir. 2005).

We find no error in the BIA's affirmance of the IJ's denial of the motion to reopen. The determination that Chen did not have a well founded fear of forced sterilization was not irrational in light of Chen's willingness in 2005 to withdraw her application for asylum and to voluntarily depart to China, and Chen's age and circumstances when she filed her motion to reopen. Although Chen relies on *Zheng* as authority that she has a viable claim that warranted reopening her application, she fails to recognize that *Zheng*'s persuasiveness in the case *sub judice* is limited for several reasons. First, the facts in *Zheng* are distinguishable as the alien was only thirty six years old and the BIA assumed that her testimony that she was repeatedly forced to have an IUD inserted, despite suffering complications after the first procedure and having the IUD removed on three occasions, was credible. Second, the BIA also assumed that the alien's theory of persecution was cognizable even though no court of appeals had yet to weigh in on

whether an alien can establish persecution on the basis that she was forced to submit to the implantation of an IUD. Remand was required, the Seventh Circuit concluded, because the denial of Zheng's claim was unsupported and unreasoned in light of the operative assumptions. These assumptions, however, are not present in this case.

Accordingly, we will deny Chen's petition for review of the BIA's order affirming the IJ's refusal to reopen her application for asylum.